**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

UNITED STATES OF AMERICA

v.                                                                       CRIMINAL ACTION NO.  3:24-00100

DUSTIN STOVER BOWLES

**MEMORANDUM OPINION AND ORDER**

Before the Court is the United States' Motion in Limine to Limit Testimony of Mary Lyndia Crotteau Huffman ("Dr. Huffman"). ECF No. 97 ("*Gov't's Mot.*"). This Motion was held in abeyance after the Pretrial Hearing on March 16, 2026. The Court is now prepared to address the matter. The Court **GRANTS in part** and **DENIES in part**.

This case involves the alleged sexual abuse of a minor which occurred in 2006 and was disclosed by the alleged victim in 2020. Both parties intend to introduce testimonial evidence at trial from experts in topics related to psychology. While the Government does not contest the qualifications of Defendant's expert, Dr. Huffman, the Government asks the Court to restrict the testimony that Defendant seeks to elicit from her. Defendant has agreed that Dr. Huffman will not testify to the truthfulness or credibility of the witnesses. *Def.'s Resp.* 4, 11, ECF No. 101.

The remaining expert testimony from Dr. Huffman that Defendant seeks to exclude follows: characterizations of the victim's delayed disclosure and the weight the juror's should assign to it in assessing credibility; characterizations of Defendant's conduct relating to grooming; factually-applied opinions on memory and associated terminology; any testimony on false belief; and opinions on investigator bias. *Gov't's Reply* 5, ECF No. 104.

**LEGAL STANDARD**

Federal Rule of Evidence 702 "imposes a special gatekeeping obligation on the trial judge to ensure that an opinion offered by an expert is reliable." *Nease v. Ford Motor Co.*, 848 F.3d 219, 230 (4th Cir. 2017) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under this rule, the "District Court has wide discretion in its determination to admit and exclude evidence, and this is particularly true in the case of expert testimony." *U.S. v. Gastiaburo*, 16 F.3d 582, 589 (4th Cir. 1994) (citing *Hamling v. U.S.*, 418 U.S. 87, 108 (1974)).

**ANALYSIS**

1. Delayed Disclosure

The Government asks the Court to limit Dr. Huffman's testimony of delayed disclosure to general concepts and to prevent her from offering opinion on witness credibility. *Gov't's Mot*. 4–5. Defendant claims Dr. Huffman should be permitted to explain factors relating to delayed disclosure that the Government's expert has not identified. *Def.'s Resp*. 4. Defendant argues the expert should be permitted to specifically indicate that the following facts should be taken into consideration when determining the victim's credibility: (1) that the first disclosure of abuse was fourteen years after, (2) that she vacationed at Defendant's home post-alleged incident, and (3) that no report of the conduct was made despite her childhood counseling. *Id.* Dr. Huffman asserts

this information counters the Government's expert witness' opinion that "delayed disclosure is consistent with a victim of child sexual abuse." *Def.'s Resp*. 4.  Dr. Huffman provides scientific support for the general idea that disclosures among children are highly variable. *Dr. Huffman Report* 2–3, Gov't's Ex. B, ECF No. 97-2 (citing London et al., 2005). However, reliability of Dr. Huffman's testimony addressing those specific factors and their relationship with delayed disclosure is not supported. In fact, Dr. Huffman's opinion on the variability of delayed disclosure counters Defendant's argument for admissibility of expert testimony as to the consideration of specific factors to determine credibility. An expert's testimony "generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Nabors v. Tincher*, No. 5:22-cv-00059, 2024 WL 3445501, at *10 (S.D. W. Va. July 17, 2024) (citing *United States v. Frazier*, 387 F.3d 1244, 1262–63 (11th Cir. 2004)).

Defendant cites *United States v. Smith,* 919 F.3d 825, 835 (4th Cir. 2019), for the proposition that expert witnesses can provide the jury with the facts of the case to consider for credibility determinations. *Id.* The expert in *Smith* did not highlight factors for the fact-finder to consider in determining witness credibility.

In *Smith*, the Fourth Circuit affirmed that the district court appropriately qualified a Federal Bureau of Investigations (FBI) agent who was testifying as a fact and expert witness and, in its wide discretion, deemed the methodology behind the expert's opinions was sound for reliable application to the facts of the case. *Smith,* 919 F.3d at 835-7. There, the expert was characterized as one that "Courts have consistently approved" to offer interpretations of gang and drug communications, based on his experience as a "twelve-year veteran of the FBI with substantial experience in drug and gang investigations." *Id.* The Fourth Circuit cited a Second Circuit decision for the proposition that an agent expert is not dissimilar from an anthropologist expert testifying

to cultures of a particular social group. *Id.* at 836 (citing *U.S. v. Mejia*, 545 F.3d 179, 190 (2nd Cir. 2008) (citing *Dang Vang v. Toyed*, 944 F.2d 476, 481–82 (9th Cir. 1991)). However, in the Ninth Circuit case where the expert-anthropologist of comparison testified, the trial court permitted the expert to testify generally as to the culture of a social group but not on his opinion of the specifics of the case: whether a rape occurred or why it was not reported. *Dang Vang*, 944 F.2d at 481. Additionally, the trial court rejected cross-examination questions regarding likelihood of accusations of rape, likelihood travel would occur with a man who was not one's spouse, and ability to articulate feelings and memory in court. *Id.* The origins of the proposition seem to cut against Defendant's argument. Thus, while Dr. Huffman may discuss general concepts behind delayed disclosure, she will not be permitted to characterize facts here (long disclosure delay, post-incident vacation with Defendant and counseling without disclosure) without providing a reliable basis for that opinion that adds to what the jury can already appropriately assess. Opinions based on knowledge or experience of the expert may be admissible if reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148 (1999). The Court does not find the opinions reliable at this point.

Dr. Huffman may identify general "situational and relational factors" which may influence disclosure; however, she shall not inform the jury what they should consider in determining credibility of the report. *See U.S. v. Cecil*, 836 F.2d 1431, 1441 (4th Cir. 1988) ("[T]he authorities seem uniform that a psychiatrist may not testify to the credibility of a witness; that issue is one for the jury."); *U.S. v. Rouse*, 111 F.3d 561, 571 (8th Cir. 1997) ("But assessing the reliability or credibility of a victim's accusations is the exclusive function of the jury."); *U.S. v. Smith*, No. 23-7029, 2024 WL 3067174, at *6 (10th Cir. June 20, 2024) (confined expert testimony to general concepts of disclosure). Accordingly, the Court denies the Government's motion to exclude this testimony but imposes limits on Dr. Huffman's testimony consistent with this ruling.

2.  Grooming

The Government asks the Court to prohibit Dr. Huffman from testifying that the Defendant's conduct was not grooming and whether such conduct contributed to delayed disclosure. *Gov't's Reply* 3. Defendant argues such testimony should be permitted to counter the Government's expert's opinion that grooming inhibits disclosure. *Def.'s Resp*. 5. Dr. Huffman provides scientific support for her assertion that, "[a]lthough grooming is a well-documented factor that can inhibit disclosure, research does not support the claim that it occurs in the majority of cases or that it alone explains disclosure timing." *Dr. Huffman Report* 2 (citing Winters et al., 2020, Gov't's Ex. B, ECF No. 104-2; London et al., 2005, Gov't's Ex. A, ECF No. 104-1). The Government accurately notes that the studies cited by Dr. Huffman support the Government's expert's opinion that grooming has a relationship to delayed disclosure. *Gov't's Reply* 2 n.1. However, Dr. Huffman's opinion, considering confounding variables in research, is also true. Accordingly, general discussions of grooming and rebuttal to the Government's expert's opinions will be permitted.[1]

Defendant also intends to have Dr. Huffman indicate she is surprised by the characterization of Defendant's conduct – rubbing the stomach of the victim with others in the room or sleeping in the same room as the victim – as grooming, and that grooming would more likely occur in other circumstances like preparing the children for bed, a responsibility of the Defendant's wife. *Def.'s Resp*. 6. The Government argues such statements are not scientifically supported and that Dr. Huffman should be prohibited from testifying that the under-the-clothes touching was not grooming or whether it contributed to lack of immediate disclosure. *Gov't's Reply* 3. If the methodology for such an opinion were sufficiently supported through studies or

---

[1] The Government did not seek to exclude testimony on general discussions of grooming. *Gov't's Mot*. 6.

experience, the testimony may be admissible. *See* Fed. R. Evid. 702(d). Defendant does not indicate how Dr. Huffman's experience or cited research studies informs her methodology characterizing Defendant's conduct to be outside the definition of grooming. Nor does she support the opinion that other non-grooming conduct negates the Government's evidence and theory of grooming. Accordingly, the Court grants the Government's motion to exclude this testimony and imposes limits on Dr. Huffman's testimony consistent with this ruling.

    3.  Memory and Suggestibility

The Government asks the Court to limit Dr. Huffman's testimony about memory, particularly implantations of false memories and suggestibility during interviews, with consideration of the different goals of interviewers. *Gov't's Reply* 3. Further, the Government seeks to prevent Dr. Huffman from using terms such as "investigative bias," "tainted," "distorted," or "memory error." *Id*.

Defendant intends to elicit testimony from Dr. Huffman explaining how memories are formed and how suggestibility can influence their formation. *Def.'s Resp*. 7. The Government is most concerned with her statement that "[w]hen conversations, therapy sessions, bias interviews, or repeated interviews cause non-experienced events to sound familiar and plausible, children and even adults may confuse the true source of the information with their actual experience. Because of these memory errors, someone cannot distinguish between the truth and a false belief." *Gov't's Reply* 3; *Def.'s Resp*. 7. The Government argues that the scientific basis for Dr. Huffman's testimony on false memories is too remote in nature to provide reliable methodology for application to the facts of this case. *Gov't's Mot*. 4; *Gov't's Reply* 3. However, the Government has not addressed Dr. Huffman's apparent expertise based on her published material on false memory and suggestibility evident on her resume. *Dr. Huffman Resume*, Gov't's Ex. A, ECF No. 97-1.

The Court will permit general discussions on false memory, interviewer goals, and suggestibility. The Court will not permit application to the facts of this case. Further, without additional support, Dr. Huffman will not be permitted to testify that "[d]isclosures made during pastoral counseling sessions may be the result of a biased interviewer who is looking for abuse to explain typical behaviors of alleged victims." *Gov't's Mot.* 8; *Dr. Huffman Report* 3. Dr. Huffman will not be permitted to use of phrases "investigative bias," "tainted," or "distorted." However, the Court does not find "memory error" in a generalized context to be argumentative. Thus, Dr. Huffman may opine on false memories and use the term "memory error." Accordingly, the Court imposes limits on Dr. Huffman's testimony consistent with this ruling.

4. Investigator Bias

The Government moves to exclude Dr. Huffman's expert testimony that "text messages Victim 1 sent after she had disclosed the sexual abuse 'improperly tainted Victim 1 with his preconceived notions of Mr. Bowles' guilt.'" Defendant argues for admissibility of Dr. Huffman's opinion as to the soundness of the U.S. Army investigator's conduct when she sought the collection of evidence through advising the victim to communicate with the Defendant through text. *Def.'s Resp.* 10; *Dr. Huffman Report* 4. While an expert's experience can validate the methodology used in forming an expert's opinion, this opinion is not backed by her experience and Defendant does not provide alternative support for her opinion. Accordingly, the Court will not permit Dr. Huffman to testify about the U.S. Army's investigator's conduct.

-8-

## CONCLUSION

The Court **GRANTS in part** and **DENIES in part** the United States' Motion in Limine to Limit Testimony of Mary Lyndia Crotteau Huffman. ECF No. 97.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshal Service.

ENTER:        April 1, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE