**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

UNITED STATES OF AMERICA

v.                                                    CRIMINAL ACTION NO.   3:24-00100

DUSTIN STOVER BOWLES

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Dustin Stover Bowles' Motion for a New Trial.

ECF No. 145 & 146.[1] The Government opposes the motion. Upon consideration of the parties'

arguments, the Court **DENIES** Defendant's motion.

**I.
FACTUAL AND
PROCEDURAL BACKGROUND**

On June 11, 2024, Defendant was indicted under the Military Extraterritorial Jurisdiction

Act with one count of Knowingly Engaging, and Knowingly Attempting to Engage in, a Sexual

Act with a Child who had not Attainted the Age of 12 years, in violation of 18 U.S.C. §§ 2241(c)

and 3261(a)(2) and one count of Knowingly Engaging in, and Knowingly Attempting to Engage

in, Sexual Contact with a Child who had not Attainted the Age of 12 years, in violation of 18

U.S.C. §§ 2244(a)(5) and 3261(a)(2). A superseding indictment was returned on April 16, 2025,

making technical changes, but charging the same offenses. From the date of the initial indictment,

the Court granted several continuances requested by the parties. Ultimately, the Court held a jury

---

[1]ECF No. 146 is a redacted version of Defendant's motion.

trial that began on April 14, 2026. Following four days of evidence, the jury found Defendant guilty of Count One for violating 18 U.S.C. §§ 2241(c) and 3261(a)(2).[2]

At the time of the offense, Defendant was enlisted in the United States Army, and he and his then-wife, Stacy, were living in Hanau, Germany. While there, Defendant and Stacy became close friends with another military family, the Gonzalezes. At trial, the Government presented evidence that Defendant and his wife would babysit for Mr. and Mrs. Gonzalez. On one such occasion during the fall of 2006, Victim 1, who was eight years old, and one of her brothers spent the night with Defendant and Stacy at their apartment. Victim 1 testified that her brother, Defendant, and she were on Defendant's L-shaped couch watching a movie. She said her brother was on one section of the couch and she was in her pajamas on another section. Victim 1 stated that Defendant was lying "really close" behind her in a "spooning" position, with his arm over her and his hand rubbing her stomach.[3] Victim 1 pretended to be asleep because it was past her bedtime. Victim 1 testified that she felt Defendant lean over her to check to see if she was awake and then she felt him reach his hand in her pajama pants, underneath her underwear, and directly touch her genitals. Defendant removed his hand when Stacy walked in the room.

Victim 1 did not disclose the abuse until 2020, when she told a friend and her pastor. Victim 1's pastor encouraged her to tell her parents, which she did. Victim 1's parents then reported the abuse to the Army Criminal Investigation Division. At the request of an Army investigator, Victim 1 texted Defendant and asked him about the abuse. In response to her text messages, Defendant

---

[2]At the conclusion of the Government's case, the Court dismissed Count Two for violating 18 U.S.C. §§ 2241(c) and 3261(a)(2).

[3]There was evidence presented at trial that Defendant often rubbed her stomach. Defendant admitted he rubbed her stomach and said he did it because Victim 1 had stomach issues.

said he recalled rubbing her stomach "a few times" because her stomach would hurt. Gov't Ex. 2,

*Text Messages between Victim 1 and Def.*, ECF No. 139-6, at 4, 7. He further texted:

> I feel so weird having this conversation with you… this is so weird you are still 10 year old [Victim 1] to me I don't know adult [Victim 1] very well so all I have is the old [Victim 1]. I'm trying to bridge that gap in my head right now so… the only thing I can offer you is so freaking weird and I cannot believe I'm having this conversation right now. So before I say any of this you have to know 100% I've never felt like attracted to you or had any kind of weird sexualized feelings about you. I'm just sitting here racking my brain trying to figure out where this is coming from and again I'm not sitting here trying to belittle you and say you are mistaken or lying or whatever. It's important to me that you understand I am taking this seriously and nothing about this is okay. I do remember one time laying behind you and I fell asleep… actually it's not that part I remember it's the part when I woke up that I remembered it. When I used to sleep with Stacy (this is soooooooo weird oh my goodness) I used to sleep with my right arm over her side like above her hip slightly and I would slide my hand between her legs and literally have my hand laying on her vagina… this feels so freaking gross right now… anyway she had yelled at me for falling asleep on the couch with you and [Victim 1's brother] before and I don't know if this was the time you are remembering or not I have no idea but I do remember sort of being startled awake and it felt like my hand was inside your waist band like it was weird because I went to lift my hand up and it was stuck under elastic. Now when I say elastic I don't know if it was your pants or your underwear or what it was I don't remember many details but it freaked me out a little bit I definitely never got "comfortable" laying with you anymore after that because I didn't know if my hand had got caught on your shirt or your pants or whatever but it was enough that it bothered me. I do know laying with Stacy we always slept the same way and I almost always every night had my hand in her pants. I just I don't know [Victim 1] I want to be able to give you a better answer because you definitely deserve the truth especially after you have buried this inside for so long. That's honestly the only thing I can begin to wrap around this to make any sense.

*          *          *

> I didn't think you even knew that night happened. I remember after I got up you were laying there with your eyes closed you didn't move I assumed you were asleep.

-3-

> I mean I don't remember feeling or touching anything I just felt like my hand may have been lower than it should have been because when I woke up and tried to move my hand it felt like something was around my hand
>
> It was like across the back of my knuckles.

*Id*., ECF No. 139-6, at 9-11, 14-15.[4] In these text messages, Defendant does not deny having his hand in Victim 1's waistband and admitted his "hand may have been lower than it should have been," but he states he does not recall "feeling or touching anything." *Id*. at 14. He appears to suggest that, while he was sleeping, he may have confused his adult wife with Victim 1. To refute this suggestion, the Government called Stacy as a witness at the trial. Stacy denied they ever slept in that position. Additionally, Stacy was approximately nine months pregnant when the abuse occurred, so the jury could have easily discounted Defendant's attempt to justify his action by saying he confused his pregnant wife with an eight-year-old.

The Government also presented testimony from another woman, referred to as "Victim 2." Victim 2 told the jury that she had spent the night with others at Defendant's house in July 2021. At the time, she was 17 years old and a Senior in high school. Victim 2 testified that she was awakened more than once during the night by someone's hand rubbing her clitoris and vagina. Although Victim 2 did not see Defendant's face, she determined he was the only person who could have touched her because she saw a hairy arm, heard and smelled his vape pen, heard his gaming chair move, and heard someone leave the room after the last time she was touched. Once she knew the person left, she looked around the room and noticed everyone else who spent the night was

---

[4]Although an investigator with the Army Criminal Investigation Division was involved in these initial text messages, the case was turned over to the FBI for further development because Defendant was no longer in the military.

asleep. The next day, she told others about what happened and, later, she reported the event to the local police.

Similarly, another woman, referred to as "Victim 3," testified that she had spent the night at Defendant's house during the summer of 2021. Victim 3 said she woke up to Defendant touching her genitals with this hand through her pants. Victim 3 said she saw Defendant's face and is confident it was Defendant who assaulted her.

When these two events occurred, Defendant was married to his current wife, Hunter. Hunter testified at the trial that Defendant touched her genitals while she was sleeping without her consent on multiple occasions. She said she would ask him to stop, but he was very persistent and would get aggressive.

In addition, the Government's called Mr. Gonzalez to testify. During his testimony, the Government showed Mr. Gonzalez two cropped pictures. The first picture shows Victim 1, shortly after the abuse, holding Defendant and Stacy's new born baby. Gov't Ex. 2, ECF No. 139-2, at 2. On the right-hand side of the picture is a young girl, whose face is redacted with a gray square. On the left side of the picture, there is an adult with a green shirt with an arm around Victim 1's shoulder, holding her close. The second picture also shows Victim 1 holding the baby and the adult with the green shirt in a similar position. *Id.*, ECF No. 139-2, at 3. In both pictures, the face of the individual in the green shirt was cropped off by the Government. When the Government asked Mr. Gonzalez if he knew who the person was in the green shirt, he testified it was Defendant because he remembered that he had given him the shirt.

On cross-examination, defense counsel showed Mr. Gonzalez uncropped versions of the same pictures. In the uncropped versions, it is clear that Defendant is not the adult in the picture; rather, it is Stacy's mother. Def.'s Exs. 3 & 4, ECF No. 140-1 &140-2. Mr. Gonzalez admitted he

was mistaken in believing the individual in the green shirt was Defendant. Defense counsel also questioned FBI Special Agent Todd Berry during cross-examination about the pictures being cropped.

Additionally, as part of his defense, Defendant had an expert testify about the way memories are formed and how suggestibility can influence memories to create false memories. In closing argument, defense counsel capitalized on Mr. Gonzalez's honest mistake and said it is a perfect example of a false memory. Defense counsel suggested the same is true of Victim 1, as she could be mistaken in her belief that Defendant touched her vagina.

Outside the presence of the jury, the Court expressed its concern that the Government had cropped the pictures and then elicited testimony from Mr. Gonzalez that the individual in the pictures was Defendant. It appeared to the Court the Government's exchange with Mr. Gonzalez was to underscore Defendant was physically affectionate with Victim 1 as part of his grooming behavior. Counsel for the Government explained that, prior to an earlier scheduled trial date, he cropped the pictures and redacted the face of the other minor girl to remove what he believed was irrelevant information. According to the counsel for the Government, he was attempting to show through the pictures what Victim 1 looked like near the time of the abuse. When counsel was preparing Mr. Gonzalez for the rescheduled trial, he showed him the cropped pictures, and Mr. Gonzalez voluntarily identified the shirt as belonging to Defendant. When he elicited that testimony from Mr. Gonzalez at trial, counsel said he had forgotten the adult in the pictures actually was Stacy's mother.

## II.
## DISCUSSION

In his motion, Defendant argues the fact the Government knew or should have known it was eliciting false testimony from Mr. Gonzalez warrants a new trial under Rule 33 of the Federal

Rules of Criminal Procedure. Rule 33 provides, in part: "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a), in part. In *Napue v. Illinois*, 360 U.S. 264 (1959), the Supreme Court held that a conviction knowingly "obtained through use of false evidence" violates the Due Process Clause of the Fourteenth Amendment. 360 U.S. at 269 (citations omitted). In *Glossip v. Oklahoma*, 604 U.S. 226 (2025), the Supreme Court explained that a *Napue* violation requires a defendant to "show that the prosecution knowingly solicited false testimony or knowingly allowed it 'to go uncorrected when it appear[ed].'" 604 U.S. at 246 (quoting *Napue*, 360 U.S. at 272; brackets added in *Glossip*). If such a showing is made, a court should award a new trial if there is a "reasonable likelihood" the testimony "could have affected the judgment of the jury." *Id.* (internal quotation marks and brackets omitted; quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Napue*, 360 U.S. at 271). The burden under this materiality standard falls upon "the beneficiary of the constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 247 (internal quotation marks and brackets omitted; quoting *United States v. Bagley*, 473 U.S. 667, 680 n.9 (1985) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

Applying this standard to Mr. Gonzalez's testimony, the Court has no difficulty finding the Government should have known that he presented false testimony when he misidentified Defendant as the individual in the green shirt. Although the Court accepts the Government's representation it was unintentional, and the Court does not believe Mr. Gonzalez purposefully testified falsely, it nonetheless was false testimony that was elicited by the Government, and the Government should have known it was false.

The burden then falls on the Government to prove beyond a reasonable doubt the misidentification did not contribute to the guilty verdict. On this front, the Court easily finds the

Government has met its burden. Defense counsel showed the jury the uncropped pictures, and Mr. Gonzalez admitted he was wrong in believing it was Defendant. Defense counsel also questioned FBI Special Agent Berry about the pictures. During closing arguments, defense counsel reiterated the fact Mr. Gonzalez was wrong and capitalized on his mistake to drive home his defense that Victim 1 may have developed a false memory about what happened. Thus, the jury was well aware Defendant was not the individual in the pictures. Given this fact, the Court finds it is simply implausible that the jury was at all confused about who was in the pictures or that Mr. Gonzalez's initial error in stating it was Defendant contributed in any way to the guilty verdict. As highlighted above, the other evidence presented by the Government at trial was more than sufficient for the jury to find Defendant guilty beyond a reasonable doubt. Therefore, the Court finds Mr. Gonzalez's false testimony did not have "an effect on the outcome of the trial." *Glossip*, 604 U.S. at 246 (internal quotation marks and citation omitted).

### III.
### CONCLUSION

Accordingly, for the foregoing reasons, the Court finds Defendant's arguments do not warrant a new trial under Rule 33 and **DENIES** Defendant's Motion for a New Trial. ECF Nos. 145 & 146.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

ENTER:         May 28, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

-8-