**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**UNITED STATES OF AMERICA**

**v.** **Criminal No. 3:24-cr-00100**

**DUSTIN STOVER BOWLES**

# DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Dustin Stover Bowles, by his counsel, submits this Memorandum outlining the various 18 U.S.C. § 3553(a) factors for the Court's consideration at his upcoming October 19, 2026, sentencing.

## A. Legal Objections:

Following a four-day trial which concluded on April 17, 2026, the jury convicted Mr. Bowles of the felony offense of aggravated sexual abuse with a child under the age of twelve. Mr. Bowles has one remaining legal objection to the Probation Officer's consideration of the five-offense level enhancement under U.S.S.G. § 4B1.5(b). This enhancement is being proposed, despite the fact that Mr. Bowles has never been convicted in the Putnam County Circuit Court on those allegations made by Victim No. 2 and is currently awaiting a trial date to be scheduled. The other reasons supporting Mr. Bowles' legal objection have been set forth in the Addendum to the final PSR. The two exhibits which accompanied Mr. Bowles' objection letter to the Probation Office have been attached as Exhibits 1 and 2 to this Memorandum.

If this objection is sustained, then the total base offense would reduce to 36 and result in an advisory guideline range of 188 to 235 months.

**B. <u>18 U.S.C. § 3553(a) Factors for Consideration:</u>**

Mr. Bowles would ask this Court to impose the statutory mandatory minimum term of imprisonment of a period of thirty years to be followed by a ten-year term of supervised release. The extended period of supervised release will include several restrictive conditions for registered sex offenders which are tailored to allow the Probation Office to monitor Mr. Bowles' return to society. Mr. Bowles would rely upon the following 18 U.S.C. § 3553(a) factors in support of this suggested sentence:

(1) Regardless of this Court's decision concerning the proposed application of the five-offense level enhancement in U.S.S.G. § 4B1.5(b), Mr. Bowles remains subject to a thirty-year statutory mandatory minimum custody sentence. That period of time represents a life-altering punishment which serves to incarcerate a first-time offender, such as Mr. Bowles, for the rest of his productive years as an adult. The charged conduct for this conviction was a one-time "sexual act" that was initially alleged by the Government to have taken place in Germany at some unknown date during the 2006 calendar year. Dkt. No. 1. The Government's subsequent Superseding Indictment served to narrow the window for the charged conduct to being between September 2, 2006, and December 31, 2006. Dkt. No. 71. This revision served to eliminate any potential defense argument for Mr. Bowles that the charged

conduct occurred prior to the July 27, 2006, enactment of the "Adam Walsh Child Protection and Safety Act of 2006", P.L. 109-248.

The passage of that legislation is significant to Mr. Bowles as that enactment served to increase the statutory penalties for violations of 18 U.S.S.C. § 2241(c) from imprisonment for a term of years to life, to a term not less than thirty years and up to life. There were also increases in the mandatory minimum penalties applicable to other offenses involving the sexual exploitation of minors and child pornography related offenses. A review of the legislative history surrounding the passage of the "Adam Walsh Child Protection and Safety Act of 2006" reflects the politically charged climate of that era as well as professed concerns about the recidivism rates for sex offenders which may no longer be valid today.

One of the proffered reasons for the need for increased penalties relied on Department of Justice ("DOJ") statistics that one in five girls and one in ten boys are sexually exploited before they reach adulthood.[1] *See* 109 H.Rpt. 218, at pg. 24 of 287. Other studies reportedly indicated that sex offenders had recidivism rates which often exceed other criminals. *Id.* at pgs. 24-25 of 287. One study purported that released sex offenders were four times more likely to be rearrested for a sex crime than released non-sex offenders. *Id.* at pg. 25 of 287. Data provided by DOJ from fifteen states in 1994 showed that a relatively small number of sex offenders (5.3%)

[1] A copy of the September 9, 2005, House of Representatives Report, 109-218 (287 pages) can be downloaded from https://www.congress.gov/committee-report/109th-congress/house-report/218/1?outputformat=pdf.

who were released from custody were arrested for a new sex crime within three years of release. *Id.*

A 2016 study undertaken by the Administrative Office of the United States Court examined the recidivism rates for federal male sex offenders and the outcomes were not as alarming as the previous figures provided to Congress.[2] The study relied upon sentencing data obtained from all 94 federal judicial districts over the period of time from 2007 to 2013. Ex. 2 at 4. At the start of any federal offender's term of supervised release, an offender undergoes a risk assessment test called the Post-Conviction Risk Assessment (PCRA) which the Probation Office uses to categorize offenders into risk levels of low, low/moderate, moderate, or high. The study showed that 30% of federal offenders convicted of sexual assaults were rated as being low risk which was about the same rate for federal male non-sex offenders (31%). Ex. 2 at 7. The rate in which offenders convicted of sexual assaults were arrested within three years of their release was 23.1% as compared to the higher rate of 31.4% for non sex offenders. Ex. 2 at 8. Only 2.2% of offenders convicted of sexual assaults were arrested for a new sexual offense. *Id.* These results would not support the prior relied upon rationale that increased punishments were necessary to keep federal sex offenders from committing crimes upon their release.

[2] A copy of the article "How Dangerous Are They? An Analysis of Sex Offenders Under Federal Post-Conviction Supervision" which appeared in the September 2016 edition of the Federal Probation Journal has been attached as Exhibit 3. This article has been relied upon as an exhibit in other sentencing memorandums for persons convicted of sex offenses that have been previously filed with this Court.

Congress was also concerned that federal judges were being "unduly lenient" by departing downward from the carefully considered ranges developed by the Sentencing Commission in federal sex offenses cases. *Id.* at pg. 29 of 287. One of the statistics that was cited for federal criminal sexual abuse cases prosecuted in 2004 reflected that 13 of 97 offenders (13%) received a non-Government sponsored downward departure at sentencing. *Id.* at pg. 30 of 287. This figure showed that the overwhelming majority of persons convicted of federal criminal sexual abuse cases received a sentence within their advisory guideline range.

It was these so-called "lenient" judges acting in the obvious minority of cases that was causing Congress to potentially lose control over "a sentencing system that requires serious sentences for serious offenders and helps prevent disparate sentences for equally serious crimes". *Id.* at pg. 30 of 287. In order to ensure a proper minimum sentence to be imposed on sex offenders, a mandatory minimum custody term of at least 30 years and the potential for life imprisonment was imposed in crimes involving the aggravated sexual abuse of minors under the age of 12 years. *Id.*

Objections were raised by some members of the House of Representatives to the imposition of higher mandatory minimum penalties. The Honorable John Conyers, Jr. from Michigan noted that mandatory minimum sentences "have been proven arbitrary, ineffective at reducing crime, and a rather considerable waste of our tax money. *Id* at pg. 168 of 287. The Honorable Bobby Scott from Virginia stated that:

> [W]e have been told by the Judicial Conference time and time again that mandatory minimum sentences violate common sense. For someone who deserved the time, they have no effect because they'll get that time. For someone who clearly does not deserve the time, they'll get that time, anyway, whether it makes sense or not.
>
> In our everyday experience, judges can see differences small and great in the facts and circumstances of the cases before them. The name of the crime is often a very poor reflector of the facts and circumstances of the crime, and it makes sense to have a rational assessor who has heard and seen the evidence and the facts and circumstances in the case making the decision of the appropriate sentence within a range that relates to the gradations of the seriousness of the crime and the characteristics of the offender.

*Id.* at pg. 186 of 287.

Mandatory minimums can result in an unwarranted sentencing disparity by treating dissimilar offenders in a similar manner, although those offenders can be quite different with respect to the seriousness of their conduct or the danger they represent to society. *Id.* at pg. 253 of 287. A person can be convicted for violating 18 U.S.C. § 2241(c) when their conduct falls within the scope of the broadly defined definition for the term, "sexual act". 18 U.S.C. § 2246(2). This term includes oral and anal sexual intercourse with a minor under the age of 12, as well as the penetration of the anal or genital opening of such a minor with an intent to gratify the sexual desire of any person. 18 U.S.C. § 2246(2)(A)(B) and (C). *Id.* The last manner that a "sexual act" can be committed is through an intentional and actual touching of the genitalia of a minor with an intent to gratify a sexual desire. 18 U.S.C. § 2246(2)(D). That portion of the definition also qualifies as a "sexual contact" under 18 U.S.C. § 2246(3). There is no statutory mandatory minimum term for committing an "abusive sexual contact" of a miner under the age of 12 under 18 U.S.C. § 2244(a)(5).

In that regard, the jury's conclusion that Mr. Bowles intentionally touched the vagina of Victim 1, results in him being subject to the same mandatory punishment as an offender who has engaged in sex with a minor under the age of 12. The imposition of the 30-year mandatory minimum unfairly does not make any distinction between an offender convicted of a one-time touching offense versus an offender whose conduct would be considered as being significantly more heinous in nature. As such, there are no additional factors in Mr. Bowles' case that would support the imposition of a longer custody sentence than called for by the 30-year mandatory minimum term.

(2) Mr. Bowles' personal history and life experiences would support the requested variance sentence. Mr. Bowles is 43 years old and, since 2018, has raised his second family in West Virginia. He has three children through his first wife, two of which have reached adulthood. He has two young sons with his second wife whom he speaks with nearly every night. Mr. Bowles is educated and has an associate's degree in computer networking. He is someone who has maintained meaningful employment for the majority of his adult life.

Mr. Bowles is a veteran of the United States Army having served more than four years on active duty. Mr. Bowles witnessed several traumatic incidents during his time in the Army which have resulted in him receiving an 80% disability rating from the Veterans Administration. Seventy percent of this rating is for post-traumatic stress syndrome.

The most serious medical issue which Mr. Bowles is presently experiencing is his Bell's Palsy diagnosis which has left the right side of his face partially paralyzed. When he was in the community, the VA recommended that he receive electro stimulus therapy on the right side of his face. Mr. Bowles would ask this Court for a recommendation that the Bureau of Prisons schedule an appointment for Mr. Bowles to see a neurologist upon intake. Mr. Bowles is also in need of dental services to replace a crown on his back tooth. Mr. Bowles would request this Court for a designation recommendation that he be housed at FCI Elkton. By being housed with other sex offenders, the risk of physical harm to Mr. Bowles is significantly reduced than if he were sent to a regular BOP facility.

Respectfully submitted this 13th day of October, 2026.

**DUSTIN STOVER BOWLES**

**By Counsel**

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

**s/David R. Bungard**
David R. Bungard, Bar Number: 5739
Assistant Federal Public Defender
Office of the Federal Public Defender
300 Virginia Street, East, Room 3400
Charleston, West Virginia 25301
Telephone: (304) 347-3350
Facsimile: (304) 347-3356
E-mail: david_bungard@fd.org